**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| GERRESHEIMER GLASS INC., <br><br> Plaintiff, <br><br> v. <br><br> EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., <br><br> Defendant. | Civil Action No. 1:23-2215-RMB-EAP <br><br> **OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

"Happy families are all alike; every unhappy family is unhappy in its own way." LEO TOLSTOY, ANNA KARENINA 1 (Richard Pevear & Larissa Volokhonsky, trans., Penguin Books 2000) (1878). So too with commercial shipping and customs relationships. For two decades Plaintiff Gerresheimer Glass Inc. ("Gerresheimer") and Defendant Expeditors International of Washington, Inc. ("Expeditors") carried on a contractual relationship whereby the latter provided customs brokerage services for the former's importation of international goods. But relations soured in late 2021 when Gerresheimer's goods failed to timely clear customs, leading to $485,348 in demurrage, or storage, fees as a result of Expeditors's alleged clearance failures.

Then, in April 2023, Gerresheimer sued Expeditors in this Court for breaching their contract (the "Brokerage Contract") and the implied covenant of good faith and fair dealing, unjust enrichment, and professional negligence. [Docket No. 1, ¶¶ 36–61 ("Compl.").] The gravamen of the Complaint is that Expeditors "failed to timely clear customs, to provide

timely and corrected DAs [or Delivery Advices[1]] to the pick-up carrier, and otherwise to facilitate the timely release of Gerresheimer's goods without incurring demurrage." [*Id.* ¶ 41.] Expeditors shot back with counterclaims for breach of contract, account stated, and quantum meruit, each seeking $129,230.17 in allegedly unpaid invoices. [Docket No. 6, at 7–8.] On January 9, 2026, Gerresheimer filed a Partial Motion for Summary Judgment, "the narrow focus of" which is the incorporation and enforceability of disputed Terms and Conditions to the Brokerage Contract which could operate to either preclude entirely or severely limit Expeditors's contractual liability. [Docket No. 78 ("Gerresheimer's Motion").] Expeditors, in turn, filed a Motion for Summary Judgment of its own seeking dismissal of the Complaint in its entirety and summary judgment as to its breach of contract counterclaim. [Docket No. 80 ("Expeditors's Motion").]

Despite having each moved for summary judgment, neither party adequately briefed (and barely addressed) the crucial choice-of-law issue undergirding the breach of contract claims, leaving it to the Court to reach out to the parties for resolution. *See* [Docket No. 90.] To the manner born, the parties' summary judgment papers are underdeveloped. They contain discovery disputes and objections, incandescent disputes of material fact, and unfortunately, unnecessary recriminations.[2] Because disagreement is rampant and questions of fact abound as to whether the Brokerage Contract incorporated the disputed Terms and Conditions—from which resolution of the parties' competing breach of contract claims

---

[1] A Delivery Advice is "a form containing data about the goods, including quantity, weight, [and] date of discharge." [Compl., ¶ 7b.]

[2] The briefing for Gerresheimer's Motion is as follows: Docket Nos. 78-2 ("Gerresheimer Br."), 85-23 ("Expeditors Opp. Br."), 88 ("Gerresheimer Reply Br."). Expeditors's Motion papers are marked as: Docket Nos. 80-1 ("Expeditors Cross Br."), 87 ("Gerresheimer Cross Opp. Br."), 89 ("Expeditors Cross Reply Br.").

inextricably flows—Gerresheimer's Motion is **DENIED IN ITS ENTIRETY** and Expeditors's Motion is **DENIED** as to Gerresheimer's breach of contract claim and Expeditors's counterclaim for breach of contract.[3]  As for Gerresheimer's extracontractual claims, the Court will **GRANT** Expeditors's Motion with respect to the covenant of good faith and fair dealing and unjust enrichment claims, but **DENY** the Motion as to professional negligence.

## I.      JURISDICTION

The Court exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  [Compl., ¶¶ 1–5.]  Gerresheimer holds New Jersey citizen of New Jersey and Expeditors that of Washington, with each party seeking at least a hundred thousand dollars in damages.  [*Id.*; Docket No. 6, at 7–8.]

While "[i]t is well settled jurisprudence that as a federal court sitting in diversity [is] required to apply the law of the state," *Thabault v. Chait*, 541 F.3d 512, 521 (3d Cir. 2008) (citations omitted), the parties, in light of their choice-of-law clause applying Washington law being contained in the disputed Terms and Conditions, stipulated to the application of New Jersey law to determine whether the Brokerage Contract incorporated the disputed Terms and Conditions in the first place, [Docket No. 90].

---

[3] Although its proposed order seeks summary judgment as to all three of its counterclaims, Expeditors's brief singularly moves for relief with respect to the breach of contract counterclaim. *See* [Expeditors Cross Br. at 18–19; Docket No. 80-25 at 1.]  The Court sees no need to address Expeditors's additional crossclaims for account stated and quantum meruit as a result.

## II.    LEGAL STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be *no* genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* A dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).  Nevertheless, "the mere existence of a scintilla of evidence," without more, will not give rise to a genuine issue for trial.  *Anderson*, 477 U.S. at 252.  In the face of such evidence, summary judgment is still appropriate "[w]here the record ... could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita Elec. Industrial Co.*, 475 U.S. at 586–87. "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide.'" *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). If the moving party makes this showing, the burden shifts to the nonmovant who "must set forth specific facts showing that there is a genuine issue for trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 401 (3d Cir. 2016) (citing *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). The Court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009). That one of the cross-motions is denied does not imply that the other must be granted. For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (citations and quotation marks omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

Each party claims the other violated the Brokerage Contract. Before reaching that merits determination, however, the Court must resolve first, if it can as a matter of law, the parties' quarrel over whether the Brokerage Contract incorporated the disputed Terms and

Conditions.  This order of progression is manifest: the disputed Terms and Conditions, if incorporated and applicable, impose several conditions on Gerresheimer that could completely bar or severely limit Expeditors's contractual liability.

First, as a threshold to filing suit, the disputed Terms and Conditions require Gerresheimer to present Expeditors with a formal proof of claim within 180 days of its loss and file suit within 1 year after the date of delivery or release of the goods.  *See* [Gerresheimer Br., Exs. K–L.]  Assuming these conditions are met, the disputed Terms and Conditions would curtail Expeditors's liability to $50 for each of the 35 shipments at issue and further prohibit any set-off or recoupment against sums owed to Expeditors, this latter provision factoring into Expeditors's counterclaim for $129,230.17 in allegedly unpaid invoices.  *See* [*id.*]  The Court thus begins with the issue of incorporation.

### A.  The Parties' Breach of Contract Claims

To prevail on a claim for breach of contract under New Jersey law, a party must establish four elements: (1) the parties entered into a valid contract; (2) the plaintiff performed its contractual obligations; (3) the defendant failed to perform its obligations; and (4) the plaintiff suffered damages as a result of the breach.  *Benjamin Moore & Co. v. B.M. Mediterranean S.A.*, Civ. No. 21-04328, 2024 WL 4589778, at *3 (D.N.J. Oct. 28, 2024) (citing *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021)).  At issue here is the first element, specifically whether the parties incorporated the disputed Terms and Conditions into the Brokerage Contract.

"[A]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms."  *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 600 (3d Cir. 2020) (quoting *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016)).

New Jersey law permits contract terms to be incorporated by reference.  *See Wollen v. Gulf Stream Restoration & Cleaning, LLC*, 259 A.3d 867, 879 (N.J. Super. Ct. App. Div. 2021) (quoting *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, 983 A.2d 604, 617 (N.J. Super. Ct. App. Div. 2009)).  "[U]nder New Jersey law, two or more writings may constitute a single contract," but "[w]hether two writings are to be construed as a single contract, however, depends on the intent of the parties.  The basic question is whether the parties assented to a writing as the complete integration of their agreement."  *Quinn*, 983 A.2d at 617 (first quoting *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 306 (3d Cir. 1982); and then citing *Lawrence v. Tandy & Allen, Inc.*, 100 A.2d 891, 894 (N.J. 1953)).

"'[F]or there to be a proper and enforceable incorporation by reference of a separate document,' (1) the separate document 'must be described in such terms that its identity may be ascertained beyond doubt' and (2) 'the party to be bound by the terms must have had "knowledge of and assented to the incorporated terms."'"  *Bacon*, 959 F.3d at 600 (quoting *id.*); *see also Wollen*, 259 A.3d at 879; *MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 403 (3d Cir. 2020) (applying New Jersey law).  Naturally, these "two factors overlap.  The more detailed the description, for example, the more likely it is that the signer of the contract gained actual or constructive knowledge of the external document."  *Bacon v. Avis Budget Group, Inc.*, 357 F. Supp. 3d 401, 417–18 (D.N.J. 2018) (applying New Jersey law).

Beyond a few agreements on what instruments constitute the Brokerage Contract, apart, of course, from the disputed Terms and Conditions, there are manifold questions of fact preventing the Court from finding with "a high degree of certainty" that incorporation thereof occurred here.  *Id.* at 417.  The few items of agreement are that the parties signed two

identical Credit Applications in 2001 and 2002 and the existence of an "unsigned" 2002 Import Customs Clearance Quote that each refer to, but do not physically include, the disputed Terms and Conditions.[4]  *See* [Docket No. 78-1 ("Gerresheimer SOMF"), ¶¶ 3–11 (quoting Gerresheimer Br., Ex. A ("Credit Applications") & C ("Import Customs Clearance Quote"); Docket No. 85-24 ("Expeditors Opp. SOMF"), ¶¶ 3–11.]  The Credit Applications state that Expeditors "has adopted general terms and conditions of service," while the Import Customs Clearance Quote refers to Expeditors's "Standard Terms and Conditions." [Gerresheimer SOMF ¶¶ 4 (quoting Credit Applications), 10 (quoting Import Customs Clearance Quote); Expeditors Opp. SOMF ¶¶ 4, 10.]   The parties also agree that Gerresheimer executed a power of attorney ("POA") in July 2007 "authorizing Expeditors to act on Gerresheimer's behalf as a customs broker."   [Gerresheimer SOMF ¶ 12 (citing Gerresheimer Br., Ex. E ("POA"); Expeditors Opp. SOMF ¶ 12.]  The POA, which similarly did not come attached with the disputed Terms and Conditions, provides the following:

> Grantor further acknowledges that all acts undertaken or services provided to grantor by grantee are subject to restrictions and limitations on liability in the Expeditors International of Washington, Inc. Terms and Conditions of Service, receipt of which is acknowledged, which are incorporated herein by reference and which shall be subject to change only by written notice received from grantee.

[Gerresheimer SOMF ¶¶ 13–14 (quoting POA); Expeditors Opp. SOMF ¶¶ 13–14.]

As is immediately apparent, these three instruments—spanning the course of six years—each refer to the disputed Terms and Conditions *with a different description*: "general terms and conditions of service;" "Standard Terms and Conditions;" and "Expeditors

---

[4] It does not appear from Expeditors's briefing that it disavows the Import Customs Clearance Quote as part of the Brokerage Contract.  *See* [Expeditors Opp. Br.; Expeditors Cross Br.; Expeditors's Cross Reply Br.]  Were it to the contrary, genuine disputes of material fact still exist for the reasons below.

International of Washington, Inc. Terms and Conditions of Service." [Credit Applications; Import Customs Clearance Quote; POA.] From the jump, then, it is difficult for the Court to conclude, even for two sophisticated parties, that the disputed Terms and Conditions are "described in such terms that its identity may be ascertained beyond doubt."[5] *Cf., e.g.*, *Quinn*, 983 A.2d at 617 (finding reference to "our standard billing practices and firm policies" "in no way specific or identifiable" and adding that "reference contained no document dates or an identifiable publication number"). And if the disputed Terms and Conditions are questionably ascertainable beyond doubt, then a genuine factual dispute naturally arises as to whether Gerresheimer knew of or assented to them.

Such being the case, the parties' back-and-forth over who sent, received, or had access to what are perforce factual questions for the jury, not this Court, to decide. Take for example the POA. True, Gerresheimer, by executing the POA, acknowledged "receipt" of "Expeditors International of Washington, Inc. Terms and Conditions of Service." [POA.] And while the Court agrees with Expeditors that "[i]t is the general rule that where a party affixes [his] signature to a written instrument, ... a conclusive presumption arises that [he] read, understood and assented to its terms and [he] will not be heard to complain that [he] did not comprehend the effect of [his] act in signing," *MZM Constr.*, 974 F.3d at 403, it is not clear whether "Expeditors International of Washington, Inc. Terms and Conditions of Service" is a "beyond[-]doubt" reference to (whatever) the disputed Terms and Conditions (are) such that the Court could find them incorporated as a matter of law, *Bacon*, 959 F.3d at 600. All the more so given that Gerresheimer signed the POA *six years after* it executed the

---

[5] Moreover, as explained a little further below, Expeditors's use of digital invoices beginning in 2016 provided a website address for a list of numerous country-specific "Global Terms and Conditions." *See* [Gerresheimer Br., Ex. I.]

9

two Credit Applications which may or may not refer to the same Terms and Conditions referenced in the POA.

For this very reason, the existence of a *2019* invoice with "Terms and Conditions of Service"—technically, a *fourth* different description by the way—which appear to be printed on a second page raises more questions than it resolves. [Gerresheimer Br., Ex. M.] Surely Gerresheimer could not have known of or assented to an incorporated document over a decade before receiving it. *See, e.g.*, *Quinn*, 983 A.2d at 619 ("Most importantly, moreover, there is no indication that the terms of the proposed incorporated document were known or assented to by defendants. To the contrary, it is without dispute that defendants were not shown and did not see the document until the fall of 2006" after signing the primary instrument in February 2006).

The same reasoning applies with equal force to Gerresheimer's alleged receipt of Expeditors's paper invoices with the disputed Terms and Conditions printed on the backside. "[B]esides the invoices," Todd Hinkle,[6] Expeditors's Regional Vice President, testified that Expeditors never supplied Gerresheimer with the disputed Terms and Conditions before or at the time of executing either the Credit Applications or POA. [Gerresheimer SOMF ¶¶ 7, 14 (citing Gerresheimer Br., Ex. B at 55:14–56:14 ("Hinkle Dep.").] As for the invoices, Lori Beyer, Expeditors's current Customs Brokerage Manager, has "been involved with" Gerresheimer since the 2001 Credit Application. [Docket No. 86, ¶¶ 1–2 ("Beyer Dec.").] Beyer attests that she "frequently looked through the printed outgoing invoices" and "actually saw invoices to [Gerresheimer] with our Terms and Conditions printed on the back side from

---

[6] Hinkle testified as Expeditors's designated corporate representative regarding: "1. Expeditors' initial engagement by Gerresheimer and the parties' underlying communications; 2. Expeditors' past and current practice for establishing standard customs brokerage terms and conditions and providing them to customers; and 3. Expeditors' practice of providing invoices to Gerresheimer, including in 2016 and earlier." [Gerresheimer SOMF ¶ 7 n.3 (quoting Gerresheimer Br., Ex. D.).]

10

the inception of our services for [Gerresheimer] in 2001 until we transitioned to electronic invoicing in 2016." [*Id.* ¶ 5.]

But the question remains: Does "Terms and Conditions" mean "beyond doubt" the "general terms and conditions of service" or "Standard Terms and Conditions" or "Expeditors International of Washington, Inc. Terms and Conditions of Service" used, respectively, by the 2001 and 2002 Credit Applications, the 2002 Import Customs Clearance Quote, and the 2007 POA? The answer is proven even more elusive, and therefore unsuitable for summary judgment, because Beyer also declares that Expeditors has "not preserved copies of invoices dating back that far, [*id.*], nor has Gerresheimer introduced them into the summary judgment record for review, to the extent it ever received them, *see* [Gerresheimer Br.; Gerresheimer Reply Br.; Gerresheimer Cross Opp. Br.")].[7]

What complicates this a bit more is the deposition testimony of Marina L. Stewart, an Expeditors accounts payable employee who may or may not have processed paper invoices. [Gerresheimer SOMF ¶ 25 (citing Gerresheimer Br., Ex. L ("Stewart Dep.")); Expeditors Opp. SOMF ¶ 25.] In response to the question, "And so your position today is that you never turned the invoices over to look at what was on the back?", Stewart testified, "I don't believe there was anything on the back of what I had." [Stewart Dep. at 24:1–25:1.] Perplexingly though, Stewart testified just one question later that she could not remember turning the paper invoices over. [Stewart Dep. at 25:2–25:3.] Yet another wrinkle is the Court's uncertainty,

---

[7] According to Expeditors, Gerresheimer "has dodged responses to Expeditors' requests to admit that it received or accessed the Terms and Conditions with an equivocal denial that it could not locate copies of the Terms and Conditions in its files." [Expeditors Opp. Br. at 15 n.7.] Outstanding, unbriefed, and belated discovery disputes are not suitable grounds for factual resolution and entitlement to summary judgment. The lack of concrete evidence before the Court as to whether Gerresheimer even received the paper invoices with the backside Terms and Conditions not only renders this seminal issue one of fact for the jury.

after review of the provided transcript, of whether the line of questioning even pertains to the paper invoices at all.  *See* [*id.* 24:1–25:24.]

Moving forward in time, the digital invoices fare no better factually.  Attached to Gerresheimer's Motion are a representative sample of the electronic invoices sent to it by Expeditors from "mid-2018 to 2022." [Gerresheimer SOMF ¶ 16.]  As is the case, Expeditors admitted in discovery that "none of the electronic invoices [it] sent to Gerresheimer contains the actual text of the Terms and Conditions."  [*Id.* ¶ 17 (citing Gerresheimer Br., Ex. H, Nos. 6–7 ("Expeditors RFA Responses")).]  But, the bottom of each electronic invoice disclaims: "An original version of this image, which can always be generated upon request, sets forth terms and conditions of service on the reverse side of this page. These terms and conditions are also available at www.expeditors.com/terms-conditions-global. All services provided are subject to these terms and conditions."  [*Id.* ¶ 18 (quoting Gerresheimer Br., Ex. G.]

The quandary here is that the cited portion of Hinkle's deposition testimony leaves it an open factual question as to whether Expeditors ever possessed original versions of the digital invoices with reverse-side Terms and Conditions.  *See* [Hinkle Dep. at 121:1–122:5.] And a clear factual dispute arises on whether the disputed Terms and Conditions were accessible on the website listed on the electronic invoices.  *See* [Gerresheimer SOMF ¶¶ 21–23; Expeditors Opp. SOMF ¶¶ 21–23.]  This mirrors an analogous factual dispute over whether Expeditors's website around the time Gerresheimer executed the POA in 2007 ever

12

featured or made accessible the disputed Terms and Conditions.[8]  *See* [Gerresheimer SOMF ¶ 15; Expeditors Opp. SOMF ¶ 15.]

For the reasons above, the Court's "overlap[ping]" inquiry, *Bacon*, 357 F. Supp. 3d at 417, into whether the parties' Brokerage Contract incorporated the disputed Terms and Conditions is rife with genuine disputes of material fact involving at a minimum three separate instruments and decades of the parties' behavior.  The Court has spent an inordinate amount of time attempting to sort out these disputed facts, only to conclude that there are many genuine factual issues.  In short, the Court is left wondering how the parties could have ever moved for summary judgment in the first place.  Because the competing breach of contract claims all require the issue of incorporation to be preliminarily resolved, Gerresheimer's Motion is denied in its entirety and Expeditors's Motion is denied as to Gerresheimer's breach of contract claim and its own counterclaim for breach of contract.

**B. Extracontractual Claims**[9]

Expeditors's Motion seeks summary judgment on Gerresheimer's claims for unjust enrichment, breach of the implied covenant of good faith and fair dealing, and professional negligence.  [Expeditors Cross Br. at 15–18.]  The asserted grounds for summary judgment are circumscribed to the Complaint and do not require the Court to review the summary judgement evidence.  *See* [*id.*]

---

[8] In addition to producing countervailing evidence, Expeditors objects to Gerresheimer's photographic evidence of the websites "in accordance with" *Atl. Fabrication & Coatings, Inc. v. ISM/Mestek*, No. A-0500-19, 2021 WL 5264364 (N.J. Super. Ct. App. Div. Nov. 12, 2021). [Expeditors Opp. SOMF ¶¶ 15, 21.]  The Court refuses to adjudicate embedded, unbriefed, and neglected disputes over record evidence.

[9] Generally implicit in the parties' briefing is that New Jersey law applies to the quasi-contractual claims analyzed below and there is otherwise no conflict identified by the parties in the briefing with another body of law.  *See* [Expeditors Cross Br.; Gerresheimer Cross Opp. Br.; Expeditors Cross Reply Br.]

### 1. *Unjust Enrichment*

Gerresheimer sets forth a claim of unjust enrichment seeking the disgorgement of the brokerage fees it paid to Expeditors. [Compl., ¶¶ 58–61.]  Expeditors contends that the parties' Brokerage Contract precludes this quasi-contractual claim as a matter of law. [Expeditors Cross Br. at 17–18.]  Timeworn New Jersey law supports Expeditors's entitlement to summary judgment on this claim.

"It is a 'well settled rule that an express contract excludes an implied one. An implied contract cannot exist when there is an existing express contract about the identical subject." *Ajayi v. CULA, LLC*, Civ. No. 23-4014 (JXN) (JBC), 2026 WL 262645, at *7 (D.N.J. Feb. 2, 2026) (quoting *Moser v. Milner Hotels*, 78 A.2d 393, 394 (N.J.1951)); *see also Voorhees v. Ex'rs of Woodhull*, 33 N.J.L. 494, 496 (E. & A. 1869).  Accordingly, "[a]n unjust enrichment claim must fail … where an express contract governs the relationship between the parties on the same subject matter." *Cont'l Cas. Co. v. J.M. Huber Corp.*, Civ. No. 13-4298 (KM) (JBC), 2022 WL 17340680, at *15 (D.N.J. Nov. 30, 2022) (first citing *In re Philips/Magnavox Television Litig.*, Civ. No. 09-3072 (PGS), 2010 WL 3522787, at *10 (D.N.J. Sept. 1, 2010); and then citing *Moser*, 78 A.2d at 394).

Gerresheimer all but concedes that its breach of contract and unjust enrichment claims are "identical," *Ajayi*, 2026 WL 262645, at *7, arguing that the latter "does not seek damages for Expeditors' breach.  Rather, it seeks to recover those fees Gerresheimer paid Expeditors on the assumption that Expeditors had provided and would provide adequate brokerage coverage services—which services were, in fact, defective," [Gerresheimer Cross Opp. Br. at 29].  Yes, the very same brokerage services and fees for which Gerresheimer seeks damages pursuant to the Brokerage Contract.  *See* [Compl., ¶¶ 36–43 ("In exchange for Expeditors'

14

performance of these services, Gerresheimer agreed to pay Expeditors a brokerage fee."). This case is and always has been grounded in the parties' Brokerage Contract, and slapping an unjust-enrichment label on it does not alter that.[10]  The Court therefore grants Expeditors summary judgment as to Gerresheimer's unjust enrichment claim.  *See Robertson v. K1 Inv. Mgmt. LLC*, Civ. No. 25-3117 (ES) (JSA), 2026 WL 892324, at *11 (D.N.J. Mar. 31, 2026) (applying New Jersey law) ("Based on a complete reading of the allegations, Plaintiff's unjust enrichment claim is duplicative of her breach of contract claim.  For these reasons, Plaintiff's unjust enrichment claim fails.").

### 2. *The Implied Covenant of Good Faith and Fair Dealing*

Gerresheimer accuses Expeditors of violating "the covenant of good faith and fair dealing … implied in every contract in New Jersey."  *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001) (citing *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997)); [Compl., ¶¶ 44–47.]  Expeditors responds that this claim "explicitly incorporates the allegations of [Gerresheimer's] contract count and alleges no damages distinguishable from those sought for breach of contract."[11]  [Expeditors Cross Br. at 15.]  This claim, in other words, is impermissibly "duplicative of [the] breach of contract claim."  *Red Hawk Fire & Sec.,*

---

[10] The Complaint itself defeats the unjust enrichment claim.  "The Third Circuit allows for pleading in the alternative when a plaintiff brings claims for both breach of contract and unjust enrichment, so long as the 'the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy.'"  *JJD Elec., LLC v. SunPower Corp., Sys.*, 738 F. Supp. 3d 569, 583 (D.N.J. 2024) (quoting *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014)).  But Gerresheimer does no such thing, specifically "incorporat[ing] the foregoing statement[ ]" that "Gerresheimer and Expeditors had a binding contract, the Brokerage Contract" into the unjust enrichment claim.  [Compl., ¶¶ 37, 58.]

[11] As explained above, the Court need not wade through the summary judgment evidence marshaled by Gerresheimer in response.  *See* [Gerresheimer Cross Opp. Br. at 16–25.]  The asserted ground for dismissal is not one of insufficient record evidence but duplicity as a matter of law.

*LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 463 (D.N.J. 2020) (citing *Adler Eng'rs, Inc. v. Dranoff Props., Inc.*, Civ. No. 14-921, 2014 WL 5475189, at *11 (D.N.J. Oct. 29, 2014)) (applying New Jersey law).

Indeed, "a claimant may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim." *Robertson*, 2026 WL 892324, at *11; *see also id.* at 463. The two claims here each allege that Expeditors "failed to timely clear customs, to provide timely and corrected DAs to the pick-up carrier, and otherwise to facilitate the timely release of Gerresheimer's goods without incurring demurrage." *See* [Compl., ¶¶ 41, 45]; *see also* [Gerresheimer Cross Opp. Br. at 16–17.] And "[a] claim for breach of the implied covenant is duplicative of a breach of contract claim when allegations of bad faith all relate to actions that form the basis of the breach of contract claim." *Cedar Holdings, LLC v. Menashe*, Civ. No. 16-7152, 2017 WL 1349321, at *3 (D.N.J. Apr. 7, 2017) (citing *Intervet, Inc. v. Mileutis, Ltd.*, Civ. No. 15-1371 (FLW) (TJB), 2016 WL 740267, at *5 (D.N.J. Feb. 24, 2016)) (applying New Jersey law).

Gerresheimer's attempted bifurcation misses the mark. It argues that, "to the extent some or all of such failures violated Expeditors' express promise under the Brokerage Contract, they support Gerresheimer's count for breach of contract. To the extent they would not violate the Brokerage Contract's express obligations, they nonetheless support Gerresheimer's count for breach of the covenant." [Gerresheimer Cross Opp. Br. at 17–18.] But "[t]he implied covenant claim is not just another name for the breach of contract claim. It does involve a distinct set of facts and considerations, even though it arises from the same general narrative as the breach of contract claim." *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 329 F. Supp. 3d 56, 75 n.10 (D.N.J. 2018) (citing *Cedar Holdings*, 2017 WL 1349321,

16

at *3).    And tacking on an allegation of "unfaithful[ness]" does not individualize Gerresheimer's doppelganger claim of breaching the implied covenant of good faith and fair dealing.  [Compl., ¶ 46]; *see, e.g.*, *Menashe*, 2017 WL 1349321, at *3 ("A conclusory statement that a breach of contract is done in bad faith is insufficient to state a claim for breach of the implied covenant of good faith.").  "Because the breach of the implied covenant allegations do not 'differ[ ] from a "literal violation"' of the [Brokerage Contract] in any respect, the implied-covenant claim must be dismissed."[12]  *Gap Props., LLC v. Cairo*, Civ. No. 19-20117 (KM) (ESK), 2020 WL 7183509, at *5 (D.N.J. Sept. 17, 2020) (quoting *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002)).

### 3.  *Professional Negligence*

Gerresheimer claims that Expeditors's alleged conduct arises to the level of professional negligence.  [Compl., ¶¶ 48–57.]  Expeditors parries that this claim is nothing more than one of contract in tort clothing, and is therefore precluded by the economic loss doctrine as "[t]he loss alleged here was purely economic."  [Expeditors Cross Br. at 16–17.]  True, "[t]he economic loss doctrine prohibits the recovery in a tort action of economic losses arising out of a breach of contract."  *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 150 n.2 (N.J. 2020) (citing *Dean v. Barrett Homes, Inc.*, 8 A.3d 766, 772 (N.J. 2010)).  But, where, as here, "a plaintiff and defendant have a contractual relationship, the economic loss doctrine provides that 'a tort remedy [will] not arise from [the parties'] contractual relationship unless the breaching party owes an independent duty imposed by law.'"  *Plastic Surgery Ctr., P.A. v.*

---

[12] The Court does not, therefore, need to address Expeditors's alternative argument that the disputed Terms and Conditions bar this claim, the incorporation of which is otherwise beset by genuine factual disputes. [Expeditors Cross Br. at 15–16.]

*UnitedHealthcare Ins. Co.*, Civ. No. 24-10856 (MAS) (TJB), 2025 WL 2918662, at *7 (D.N.J. Oct. 14, 2025) (quoting *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 278, 280 (N.J. 2002)).

The Complaint alleges that Expeditors "owed a duty of care to Gerresheimer" for "h[olding] itself out as providing professional customs brokerage" and subsequently breached that obligation. [Compl., ¶¶ 48–57.] "[I]n addition to its obligations under the Brokerage Contract," Gerresheimer argues that this duty of care arose from two independent sources. [Gerresheimer Cross Opp. Br. at 27–28.] First, "as a licensed customs broker," 19 U.S.C. § 1641(b)(4), a federal customs statute, imposed a duty on Expeditors to "exercise responsible supervision and control over the customs business that it conducts." [*Id.* (quoting 19 U.S.C. § 1641(b)(4)).] Expeditors also allegedly owed Gerresheimer a New Jersey "common-law duty of care in providing its professional services and in acting as Gerresheimer's professional broker and agent," [*id.*], "such as with doctors, attorneys, manufacturers, or bailees," *1410 Grand Adams, LLC v. Trematore Constr., LLC*, Civ. No. A-2560-23, 2025 WL 1742859, at *11 (N.J. Super. Ct. App. Div. June 24, 2025) (citing *Saltiel*, 788 A.2d at 280–81).

To the Court's consternation, Expeditors does not squarely address whether these two sources of law impose an independent duty, as would be expected from a summary judgment movant. *See* [Expeditors Cross Br. at 16–17; Expeditors Cross Reply Br. at 13–15.] Sure, Expeditors fleetingly directs the Court to *Schenker, Inc. v. Expeditors Int'l of Wash., Inc.*, with which the Court is inclined to agree that no New Jersey common-law duty exists for "fail[ing] to properly arrange for clearance through customs," but *Schenker* does not comment at all on whether 19 U.S.C. § 1641(b)(4) imposes a duty of care on licensed customs brokers.[13] *See* No.

---

[13] *Schenker* also dealt with a contractual dispute over customs brokerage services between Gerresheimer and Expeditors. 2016 WL 3563187, at *1.

A-3555-14T1, 2016 WL 3563187 at *3–*4 (N.J. Super. Ct. App. Div. July 1, 2016) (per curiam) (citing *Saltiel*, 788 A.2d at 279–81). As such, Expeditors has not shown that it is entitled to summary judgment as a matter of law. *See, e.g.*, *James v. Templeton*, Civ. No. 3:19-CV-00270, 2022 WL 428174, at *8 (M.D. Pa. Feb. 11, 2022) ("In sum, given the deficient briefing, we conclude that Templeton has not shown that she is entitled to judgment as a matter of law. Thus, we will deny her motion for summary judgment."). Because the Court cannot properly review whether the independent duty doctrine permits Gerresheimer's negligence claim to proceed, summary judgment is inappropriate at this time and a contrary determination would be unduly precipitous. *Cf., e.g.*, *JAS Supply, Inc. v. Radiant Customs Servs., Inc.*, No. 2:21-CV-01015-TL, 2023 WL 7653250, at *7 (W.D. Wash. Nov. 15, 2023) (applying Washington law) (determining that economic loss rule did not bar tort claims against customs broker and denying summary judgment because plaintiff adequately alleged duties from, *inter alia*, "federal regulations governing licensed customs brokers").[14]

## IV.    CONCLUSION

For the foregoing reasons, Gerresheimer's Partial Motion for Summary Judgment is **DENIED IN ITS ENTIRETY** and Expeditors's Motion for Summary Judgment is **DENIED IN PART** and **GRANTED IN PART**. Expeditors's Motion for Summary Judgment is **DENIED** as to Gerresheimer's breach of contract and professional negligence claims, as well as Expeditors's counterclaim for breach of contract. Expeditors's Motion for Summary Judgment is, however, **GRANTED** with respect to Gerresheimer's implied covenant of good faith and fair dealing and unjust enrichment claims. The Court intends to **SCHEDULE** this

---

[14] The application of Washington, as opposed to New Jersey law, in *JAS Supply* does not undermine the Court's intention here. The Court refers to *JAS Supply* as just one example of a court finding that *federal law* imposed an independent duty on a licensed customs broker in a negligence action.

matter for **TRIAL** upon submission of the Final Pre-Trial Order.  An accompanying Order shall issue.

**April 28, 2026**                                    **/s/ Renée Marie Bumb**
Date                                                          Renée Marie Bumb
                                                                Chief United States District Judge